Renee C. Ohlendorf, Esq. SBN 263939
HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
Telephone:   310-909-8000
Facsimile:   310-909-8001

Attorneys for Defendant
Merchants Credit Guide Company

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ansel Glendenning,<br><br>        Plaintiff,<br><br>vs.<br><br>Merchants Credit Guide Company,<br><br>        Defendant. | Case No.  **2:10-CV-01465-GEB-KJN**<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT; MOTION FOR SANCTIONS IN THE AMOUNT OF $8,200 AGAINST PLAINTIFF AND/OR PAUL E. SMITH, ESQ.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF RENEE C. OHLENDORF**<br><br>Date:   September 27, 2010<br>Time:  9:00 a.m. |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

   **PLEASE TAKE NOTICE THAT** on September 27, 2010 at 9:00 a.m., in Courtroom 10 of the above-entitled court, defendant Merchants Credit Guide Company (hereinafter "Defendant") will and hereby does move for an Order enforcing the settlement agreement that was reached by the parties in writing on July 29, 2010 and dismissing this action with prejudice.  Additionally, Defendant will and hereby does move for an Order issuing monetary sanctions in the amount

1

31174125v1 913919 47170

of $8,200 against Plaintiff Ansel Glendenning and/or his attorney of record, Paul E. Smith, Esq.

The Motion to Enforce Settlement Agreement and Motion for Sanctions is based upon this Notice, the Memorandum of Points and Authorities in support thereof, the Declaration of Renee C. Ohlendorf and all exhibits attached thereto, all other pleadings and records on file in this action, as well as such oral argument or other evidence that this Court may consider at the hearing on these motions.

DATED:  August 12, 2010                    HINSHAW & CULBERTSON LLP


                                           By:    *s/Renee Choy Ohlendorf, Esq.*
                                                  Renee C. Ohlendorf
                                                  Attorney for Defendant
                                                  Merchants Credit Guide Company

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On July 29, 2010, Plaintiff Ansel Glendenning (hereinafter "Plaintiff") accepted the terms of defendant Merchants Credit Guide Company's (hereinafter "Defendant") settlement offer.  On August 6, 2010, Plaintiff agreed to the terms of the settlement agreement and release, and filed a Notice of Settlement [Docket 8] with this Court confirming that an agreed resolution had been reached.  Plaintiff now states that he wants to go to trial, and refuses to execute the settlement agreement and release to which he agreed.

Instead of simply executing the agreed upon settlement agreement and release, Plaintiff and his counsel, Paul E. Smith, have chosen to engage in a pattern of nonsensical and harassing behavior in what Defendant can only surmise to be a transparent attempt to increase the amount of Plaintiff's attorneys' fees and costs to be recovered under the fee-shifting provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter "FDCPA"), and the California Rosenthal Fair Debt Collections Act, *California Civil Code* §1788 *et seq.* (hereinafter "Rosenthal Act").

The sequence of events is summarized as follows[1]:

1.     On July 29, 2010, the parties reached a settlement agreement on the dollar amount, confidentiality of settlement[2], timing of payment, and that the remaining components of the agreement would be memorialized in a settlement agreement and release.  Specifically, the parties agreed that Defendant would pay a lump sum of $3,500, which was to be inclusive of attorneys' fees and costs, that the terms of settlement would be confidential, and that Plaintiff would receive

---

[1] The complete sequence of events pertaining to the settlement agreement and release between the parties is set forth in full in the Declaration of Renee C. Ohlendorf, with all correspondence between counsel attached thereto.

[2] The terms of the settlement agreement and release reached by the parties provide that the parties may disclose its terms as necessary to secure court approval and enforcement, and nevertheless, the confidentiality is unilateral to the Plaintiff and not Defendant.

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

31174125v1 913919 47170

1  payment after he had executed an agreed upon release,[3] *see* Ohlendorf Decl. ¶3-4

2  and Exhs. C and D thereto;

3        2.     Eight days later on Friday, August 6, 2010, at approximately 8:48

4  a.m., Plaintiff's counsel falsely accused Defendant of breaching the settlement

5  because it had not yet paid the settlement monies, and threatened to file a motion to

6  convert the settlement to a judgment and to seek additional attorneys' fees and

7  costs if he did not receive payment by Monday, August 9, 2010, *see* Ohlendorf

8  Decl., ¶6 and Exh. H thereto;

9        3.     Approximately two hours later at 10:36 a.m., the parties reached an

10  agreement on the language of the settlement agreement and release, *see* Ohlendorf

11  Decl., ¶¶7-8 and Exhs. I, J, and K thereto;

12        4.     Four minutes later at approximately 10:40 a.m., Plaintiff's attorney

13  stated that he would "file to convert the settlement to a judgment", again demanded

14  that Defendant pay $3,500 by Monday, August 9, 2010, then reversed himself and

15  stated "there will be no release of any claims", and further characterized Defendant

16  as "unbelievably obnoxious", *see* Ohlendorf Decl. ¶9 and Exh. L thereto;

17        5.     Plaintiff's attorney then filed a Notice of Settlement [Docket 8]

18  shortly thereafter at approximately 11:37 a.m., confirming that the parties had

19  indeed reached a settlement agreement;

20        6.     About twenty minutes later at 11:58 a.m., Plaintiff's attorney then

21  attempted to renegotiate the terms of the settlement agreement when he sent

22  another draft of same. *See* Ohlendorf Decl. ¶12 and Exhs. N and O thereto.

23  Defendant did not agree to the revised release, which inexplicably omitted all of

24  Defendant's modifications Plaintiff had agreed to, as well as the majority of the

25

---

26  [3] It should be noted that these terms were favorable to Plaintiff and specifically requested by him, as evidenced by the fact that Plaintiff's attorney asked defense counsel if this offer "was still on the table" after having previously

27  rejected the exact same terms and after Defendant filed its Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike. Mr. Smith characterized the motions as "frivolous and laughable" even though he reconsidered his

28  negotiating position as a result. *See* Ohlendorf Decl., ¶2 and Exhs. A and B thereto.

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

3174125v1 913919 47170

1  provisions that Plaintiff's counsel had himself drafted, shortening the agreement

2  from four pages to one;

3      7.      Three hours later at approximately 3:08 p.m. and again on August 9,

4  2010 at 1:08 p.m., Plaintiff's attorney requested defense counsel to stipulate that

5  the parties were unable to reach a settlement agreement and to have this case

6  reinstated on the Court's calendar, to which Defendant did not consent because a

7  settlement agreement had clearly been reached, *see* Ohlendorf Decl. ¶¶19 and 21

8  and Exhs. V and X thereto;

9      8.      On August 9, 2010 at 2:33 p.m., Plaintiff's attorney confirmed that his

10  client would not sign the release as agreed and that he intended to go to trial, *see*

11  Ohlendorf Decl. ¶23 and Exh. Z thereto.

12      Such behavior in bad faith by Plaintiff and his counsel should not be

13  tolerated, and this Court should hold them accountable for their waste of judicial

14  and litigation resources.

15

16  **II.    THIS COURT HAS INHERENT AUTHORITY TO ENFORCE**

17  **        SETTLEMENT AGREEMENTS**

18      There is a strong public policy in favor of settlements. *U.S. v. McInnes*, 556

19  F.2d 436, 441 (9th Cir. 1977). Courts have inherent power to enforce settlement

20  agreements between parties in pending cases. *TNT Marketing, Inc. v. Agresti*, 796

21  F.2d 276, 278 (9th Cir. 1986) (citing *In re Suchy*, 786 F.2d 900, 902-03). The

22  construction and enforcement of settlement agreements are governed by California

23  law. *United Commercial Ins. Service, Inc. v. The Paymaster Corp.*, 962 F.2d 853,

24  856. Settlement agreements are interpreted under general principles of contract

25  law, and are treated as any other contract for purposes of interpretation. *Id.*

26      Under California law, mutual assent to contract is based upon the objective

27  intent of the parties. *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th

28

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS
31174125v1 913919 47170

1565, 1587.  In determining the parties' intent, courts look to "the intent manifested in the agreement and by surrounding conduct – rather than the subjective belief of the parties".  *United Commercial Ins. Service, Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (citations omitted).  Settlement agreements will be enforced where all material terms are definite, including the settlement amount.  *Ellerd v. County of Los Angeles*, 273 Fed.Appx. 669, 670 (9th Cir. 2008) (affirming enforcement of settlement agreement).

   Indeed, in a case similar to this,  the Ninth Circuit Court of Appeals affirmed a district court's enforcement of a settlement agreement where the parties had reached a settlement agreement in mediation, the plaintiff filed a Notice of Settlement, then tried to repudiate his settlement agreement by filing a "Notice of Plaintiff's Rejection of Settlement and Request that the Case Not Be Dismissed."  *Camacho v. City of San Luis*, 359 Fed.Appx. 794 (9th Cir. 2009).

## III.   THE PARTIES ENTERED INTO A SETTLEMENT AGREEMENT ON JULY 29, 2010

   On July 29, 2010, at approximately 11:53 a.m. defense counsel made the following settlement offer:

> The offer is $3,500, which is inclusive of attorneys fees and costs, plus confidentiality of settlement.  Payment will be made promptly after receipt of an agreed release executed by your client.  Let me know.  *See* Ohlendorf Decl., ¶3 and Exh. C thereto.

Approximately three hours later at 2:54 p.m., Plaintiff's attorney accepted the settlement offer as follows:

> **Accepted.  Draft settlement agreement attached.**  Let me know if it is acceptable so that I may send it on to my client for signature.  *See* Ohlendorf Decl., ¶4 and Exhs. D and E thereto.  (emphasis added).

6

1 (The aforementioned draft settlement agreement and release is hereinafter referred
2 to as "Draft Release No. 1", and attached to Ohlendorf Declaration as Exhibit E.

3    Eight days later on Friday, August 6, 2010, Plaintiff confirmed that there
4 was indeed a settlement and that he intended to be bound thereby when he made
5 multiple baseless threats that day to file a motion converting the settlement into a
6 judgment if he did not receive payment of the $3,500 by the close of business on
7 Monday, August 9, 2010. *See* Ohlendorf Decl., ¶6 and Exh. H thereto. **Surely, if**
8 **Plaintiff did not think there was a settlement, he would not have threatened to**
9 **convert it into a judgment!**

10    After completing review of Draft Release No. 1 with her client, defense
11 counsel forwarded proposed modifications to Draft Release No. 1 (hereinafter
12 "Draft Release No. 2" or "Agreed Release"). *See* Ohlendorf Decl., ¶7 and Exhs. I
13 and J thereto. Plaintiff's attorney agreed to the modifications by defense counsel
14 as reflected in Draft Release No. 2, and stated as follows:

15    **I will make the changes you referenced to the settlement**
16    **agreement, send to my client for signature, and get it to you**
17    **ASAP.** *See* Ohlendorf Decl., ¶8 and Exh. K thereto. (emphasis
18    added)

19    Plaintiff again confirmed that there was a settlement between the parties
20 when he **filed a Notice of Settlement** with this Court on August 6, 2010 at
21 approximately 11:37 a.m. [Docket 8]. The Notice of Settlement states,

22    PLEASE TAKE NOTICE that this action has settled in full as to all
23    parties and all causes of action.

24    The parties' conduct in this case clearly evidences a settlement agreement
25 has been reached. There can be no other reason for Plaintiff filing a Notice of
26 Settlement and threatening to file a motion to convert the settlement into a

27

28

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS
3174125v1 913919 47170

1 judgment. There can be no other reason that Plaintiff would agree to Defendant's
2 modifications to the release and agree to execute same.

3       That Plaintiff had a change of heart about signing the Agreed Release does
4 not mean there was no settlement agreement. Though Plaintiff now takes the
5 position that there is no settlement, his position is belied by his numerous threats to
6 file a motion to convert the settlement into a judgment, the filing of a Notice of
7 Settlement, the correspondence between counsel, and the Agreed Release.

8

9 **IV.   PLAINTIFF HAS BREACHED THE SETTLEMENT AGREEMENT**
10        **BY REFUSING TO SIGN THE AGREED RELEASE**

11       The obligations of the parties under the settlement are clearly set forth in the
12 Agreed Release. Exh. J to Ohlendorf Decl. Plaintiff agreed to those terms. *See*
13 Ohlendorf Decl. ¶8 and Exhibit K thereto. A material and agreed term calls for
14 Plaintiff to execute the Agreed Release. *See* Paragraph 1 to Exh. I to Ohlendorf
15 Decl. Plaintiff now disingenuously states that he does not have to sign the Agreed
16 Release by denying ever having agreed to same. *See* Ohlendorf Decl. ¶23 and
17 Exhibit Z thereto.

18       It is clear that Plaintiff has not honored and will not honor his agreement and
19 is in breach of the Agreed Release. Plaintiff has offered no basis for reneging on
20 the Agreed Release, and there is no legitimate reason to back out of this agreement
21 other than for bad faith purposes.

22

23 **V.   PLAINTIFF SHOULD BE ORDERED TO SPECIFICALLY**
24       **PERFORM AND PAY DEFENDANT'S ATTORNEYS' FEES AND**
25       **COSTS PURSUANT TO THE SETTLEMENT AGREEMENT**

26       This Court has the authority to order specific performance of the settlement
27 agreement, to award damages against the breaching party, and to impose sanctions
28

for contempt in order to remedy a breach of a settlement agreement. *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).

Moreover, the parties in this case specifically agreed that in the event of a breach, that the prevailing party may recover its attorneys' fees and costs in connection with enforcing the agreement.[4] The pertinent provision is found at Paragraph 11 in the Agreed Release, which states as follows:

> In any action that is brought upon to enforce this agreement, **the prevailing party shall be entitled to recover its reasonable costs, including attorney fees**, as determined by the parties or by the Court, incurred to enforce the Agreement. (emphasis added). *See* Exhibit J to Ohlendorf Decl.

In this case, Defendant will incur approximately $8,200 in attorneys' fees in enforcing the settlement agreement between the parties. *See* Ohlendorf Decl. ¶27. Defendant respectfully requests the Court to issue an Order reimbursing it for same.

## VI.   PLAINTIFF AND/OR HIS ATTORNEY, PAUL E. SMITH, SHOULD BE SANCTIONED FOR REFUSING TO SIGN THE SETTLEMENT AGREEMENT

The Ninth Circuit Court of Appeals has held that a party that refuses to sign a settlement agreed to in open court may be sanctioned. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (imposing monetary sanctions when plaintiff agreed to settlement before court but later refused to sign agreement). Specifically, "[a]n agreement announced on the record becomes binding even if a party has a change of heart after (he or she) agreed to its terms but before the terms are reduced to writing." *Id.*; *see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 491 (7th

---

[4] Indeed, this provision was introduced by Plaintiff's attorney in his Draft Release No. 1 and agreed to by Defendant.

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

Cir. 2002) (dismissing case with prejudice where plaintiff refused to sign settlement agreed to before judge); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).

In this case, Plaintiff announced on the record that the parties had reached a settlement agreement when he filed a Notice of Settlement.  [Docket 8].  That Plaintiff agreed to the specific terms of settlement in the release is confirmed by correspondence between counsel for the parties.  Plaintiff now refuses to execute the settlement agreement to which he agreed.

This Court should accordingly issue monetary sanctions in the amount of $8,200 against Plaintiff and/or his attorney of record, Paul E. Smith for Defendant's attorneys' fees and costs incurred in enforcing the Settlement Agreement.  *See* Ohlendorf Decl. ¶27.

## VII.   CONCLUSION

Based on the forgoing, Defendant Merchants Credit Guide Company respectfully requests that this Court enter an Order

1.      Requiring Plaintiff Ansel Glendenning to specifically perform under the Settlement Agreement and Release,

2.      Reimbursing Defendant in the amount of $8,200 for its attorneys fees and costs incurred in enforcing the Settlement Agreement,

3.      Issuing monetary sanctions in the amount of $8,200 against Plaintiff Ansel Glendenning and/or his attorney of record, Paul E. Smith, Esq. for Defendant's attorneys' fees and costs incurred in enforcing the Settlement Agreement,

4.      Dismissing this action with prejudice; and

///

///

10

31174125v1 913919 47170

1    5.    Issuing any other relief that this Court deems just and proper.

2

3   DATED:  August 12, 2010                HINSHAW & CULBERTSON LLP

4

5                                          By:    *s/Renee Choy Ohlendorf, Esq.*
                                                  Renee C. Ohlendorf
6                                                 Attorney for Defendant
                                                  Merchants Credit Guide Company
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
11

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

## DECLARATION OF RENEE C. OHLENDORF

I, Renee C. Ohlendorf, declare as follows:

1.     I am over the age of eighteen years old and am not a party to the within action.   I am an associate at Hinshaw & Culbertson LLP, counsel of record for Defendant Merchants Credit Guide Company in this matter.   I have personal knowledge of the facts stated below and would and could competently testify thereto under oath.

2.     On July 27, 2010, Paul E. Smith, Esq., counsel of record for Plaintiff Ansel Glendenning, asked me in an e-mail whether an offer that he had previously rejected "was still on the table" shortly after I filed a Motion to Dismiss and Motion to Strike on behalf of Defendant the same day. [Docket 6].   A true and correct copy of said email is attached hereto as **Exhibit A** and incorporated herein by this reference.   I had previously offered to settle this matter on July 26, 2010 for $3,500, which was inclusive of attorneys' fees and costs, plus confidentiality of settlement, with payment to be made promptly after receipt of an agreed release executed by Plaintiff.   A true and correct copy of said email is attached hereto as **Exhibit B** and incorporated herein by this reference.

3.     After receiving authorization to do so from my client, on July 29, 2010 at approximately 11:53 a.m., I again made a settlement offer for $3,500, which was inclusive of attorneys' fees and costs, plus confidentiality of settlement, with payment to be made promptly after receipt of an agreed release executed by Plaintiff.[1]   A true and correct copy of my email containing said offer is attached hereto as **Exhibit C** and incorporated herein by this reference.

---

[1] On July 28, 2010 at approximately 1:16 p.m., I advised Mr. Smith that I was not sure if my client would authorize settlement at $3,500 since Plaintiff had been unwilling to resolve the matter a reasonable amount before the filing of the Motion to Dismiss.  Mr. Smith responded by calling the Motion to Dismiss "frivolous and laughable" despite the fact that there was a good faith basis for bringing the Motion due to the numerous deficiencies of the Complaint and based on the existing caselaw upholding dismissals for similar deficiencies in other complaints.  A true and correct copy of said emails are collectively attached hereto in **Exhibit B** and incorporated herein by this reference.

1

31174255v1 913919 47170

4.      A few hours later at approximately 2:54 p.m., Mr. Smith accepted my client's offer via email.  A true and correct copy of said email is attached hereto as **Exhibit D** and incorporated herein by this reference.  Mr. Smith also attached a draft settlement agreement in PDF format for my review and consideration (hereinafter "Draft Release No. 1").  A true and correct copy of same is attached hereto as **Exhibit E** and incorporated herein by this reference.

5.      On July 30, 2010, I e-mailed Mr. Smith requesting that the draft settlement agreement be re-sent in Word format so that I could easily make red-line revisions to that document, and also requested information for issuance of the settlement draft.  A true and correct copy of said is attached hereto as **Exhibit F** and incorporated herein by this reference.  Mr. Smith declined to re-send the draft settlement agreement in Word format.  A true and correct copy of his e-mail is attached hereto as **Exhibit G** and incorporated herein by this reference.

6.      Eight days later on Friday, August 6, 2010 at approximately 8:48 a.m., Mr. Smith accused my client of "stalling" and threatened to file a motion to convert the settlement to a judgment and to seek additional fees and costs if he did not receive payment by Monday, August 9, 2010.  A true and correct copy of his e-mail reflecting same is attached hereto as **Exhibit H** and incorporated herein by this reference.

7.      By the terms of the agreement between the parties, payment from Defendant was due "promptly" after receipt of an agreed upon release executed by Plaintiff.  *See* Exhs. B, C, D, and E attached hereto.  As Plaintiff had not executed an agreed release, no payment was warranted at that time.  I reminded Mr. Smith of that term in an e-mail sent at approximately 10:28 a.m. the same day, and also forwarded in the same e-mail a redlined version of Draft Release No. 1 with my proposed modifications and an explanation of those modifications (hereinafter "Draft Release No. 2" or "Agreed Release").  A true and correct copy of said e-mail is attached hereto as **Exhibit I** and incorporated herein by this reference, and a true and correct copy of

DECLARATION OF RENEE C. OHLENDORF

31174255v1 913919 47170

1  Draft Release No. 2 is attached hereto as **Exhibit J** and incorporated herein by this

2  reference.

3       8.    Mr. Smith agreed to my modifications as reflected in Draft Release No.

4  2, stating as follows in his response e-mail sent at approximately 10:36 a.m.:

5          **I will make the changes you referenced to the settlement agreement,**

6          **send to my client for signature, and get it to you ASAP.** (emphasis

7          added).

8  He also falsely stated that Defendant had "agreed to make 'immediate payment'",

9  which it did not.  He then falsely accused Defendant of breaching the settlement

10  agreement and continued to threaten that if Defendant did not pay by 5 p.m. on

11  Monday that he would seek additional fees and costs and would not dismiss the case

12  until his additional fees and costs were resolved.  A true and correct copy of said e-

13  mail is attached hereto as **Exhibit K** and incorporated herein by this reference.

14       9.    Four minutes later at approximately 10:40 a.m., Mr. Smith stated via e-

15  mail again that he would "file to convert the settlement to a judgment", demanded

16  payment by Monday, then reversed himself and informed me that "there will be no

17  release of any claims", and further characterized my client as "unbelievably

18  obnoxious".  A true and correct copy of his e-mail is attached hereto as **Exhibit L** and

19  incorporated herein by this reference.

20       10.    Approximately twenty minutes later at 11:00 a.m., Mr. Smith again

21  threatened to file a motion to convert the settlement to a judgment and that he

22  "look[ed] forward to obtaining a judgment against [my] client".  A true and correct

23  copy of his e-mail reflecting same is attached hereto as **Exhibit M** and incorporated

24  herein by this reference.

25       11.    Despite all of this, Mr. Smith confirmed that there was indeed a

26  settlement agreement reached by the parties when he filed a Notice of Settlement with

27  this Court at approximately 11:37 a.m. [Docket 8].

28

DECLARATION OF RENEE C. OHLENDORF

31174255v1 913919 47170

12.    At approximately 11:58 a.m., Mr. Smith sent another e-mail with a third version of the settlement agreement (hereinafter "Draft Release No. 3"), and threatened Defendant with a motion to convert the settlement into a judgment if Defendant did not sign it that day.  A true and correct copy of his e-mail is attached hereto as **Exhibit N** and incorporated herein by this reference, and a true and correct copy of Draft Release No. 3 is attached hereto as **Exhibit O** and incorporated herein by this reference.

13.    I responded via e-mail approximately an hour later at 1:00 p.m. and informed Mr. Smith that while I expected a settlement draft to arrive at my office on Monday, I would not disburse that draft until Plaintiff executed the Agreed Release as promised.  I further informed Mr. Smith that if he chose to go forward with a motion to convert the settlement into a judgment, that my client would pursue a Rule 11 motion for sanctions and seek its attorneys' fees and costs associated with defending a baseless motion. A true and correct copy of said e-mail is attached hereto as **Exhibit P** and incorporated herein by this reference.

14.    At approximately 1:08 p.m., Mr. Smith again threatened "court involvement" if Defendant did not sign Draft Release No. 3, but then asked for advice on how to avoid court involvement.  A true and correct copy of his e-mail is attached hereto as **Exhibit Q** and incorporated herein by this reference.

15.    In an e-mail sent at approximately 2:02 p.m., Mr. Smith once more threatened to file a motion to convert the settlement into a judgment.  A true and correct copy of said e-mail is attached hereto as **Exhibit R** and incorporated herein by this reference.

16.    At approximately 2:50 p.m., I asked Mr. Smith why his client would no longer sign the Agreed Release, to which Mr. Smith had very clearly agreed on Plaintiff's behalf.  I also advised Mr. Smith that Draft Release No. 3 was not acceptable to my client because it omitted all of Defendant's modifications, as well as the majority of the provisions that Mr. Smith himself had drafted.  I again informed

4

31174255v1 913919 47170

1  Mr. Smith that if he wanted to avoid court involvement, he could sign the Agreed

2  Release as promised, my client would then promptly disburse the settlement draft, and

3  this case could resolve.  A true and correct copy of said e-mail is attached hereto as

4  **Exhibit S** and incorporated herein by this reference.

5         17.    At approximately 3:02 p.m., Mr. Smith responded, "your goal of bilking

6  more fees out of your client will surely be reached."  A true and correct copy of said

7  e-mail is attached hereto as **Exhibit T** and incorporated herein by this reference.

8         18.    At approximately 3:03 p.m., Mr. Smith went on to ask me if I had any

9  objections to him recommending to Plaintiff to "go forward on the basis that we were

10  unable to consummate settlement" and further informed me he intended to take this

11  case to trial.  A true and correct copy of said e-mail is attached hereto as **Exhibit U**

12  and incorporated herein by this reference.

13         19.    At approximately 3:08 p.m., Mr. Smith sent yet another e-mail asking if I

14  would sign a stipulation stating that the parties could not consummate settlement and

15  requesting the case be kept on track for trial.  A true and correct copy of said e-mail is

16  attached hereto as **Exhibit V** and incorporated herein by this reference.

17         20.    At approximately 4:01 p.m., Mr. Smith stated he would file "the Notice"

18  and address my motion promptly.  A true and correct copy of said e-mail is attached

19  hereto as **Exhibit W** and incorporated herein by this reference.  I do not know what he

20  meant by "the Notice", but I understood "address my motion" to mean that he would

21  address Defendant's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to

22  Strike, as those were the only motions pending at that time.

23         21.    The next day on August 9, 2010 at approximately 1:08 p.m., Mr. Smith

24  requested via e-mail that I sign a stipulation stating that the parties did not agree on a

25  material term of the settlement and requesting this Court to "place the case back on its

26  normal calendar".  Mr. Smith further informed me that he intended to file an amended

27  complaint.  A true and correct copy of said e-mail is attached hereto as **Exhibit X** and

28  incorporated herein by this reference.

DECLARATION OF RENEE C. OHLENDORF

31174255v1 913919 47170

22.    I responded approximately an hour later at 2:19 p.m., and informed Mr. Smith that I had received the settlement draft and requested confirmation of whether Plaintiff would be signing the Agreed Release as promised.  I further informed Mr. Smith that I would not agree to his proposed stipulation and would bring this motion to enforce the settlement if Plaintiff continued to refuse to execute the Agreed Release.  A true and correct copy of said e-mail is attached hereto as **Exhibit Y** and incorporated herein by this reference.

23.    At approximately 2:33 p.m., Mr. Smith replied via e-mail that there was no settlement and that his client intended to go to trial.  A true and correct copy of said e-mail is attached hereto as **Exhibit Z** and incorporated herein by this reference.

24.    At approximately 3:11 p.m., Mr. Smith then claimed that his client had agreed to perform under the agreed terms of settlement, despite the fact that his client still had not signed the Agreed Release.  He further asked me what relief I intended to request of the Court.  A true and correct copy of said e-mail is attached hereto as **Exhibit AA** and incorporated herein by this reference.

25.    On August 11, 2010, at approximately 12:43 p.m., Mr. Smith again e-mailed me stating that he would inform this Court that the parties were unable to finalize settlement and further that I had "stopped responding to [his] reasonable attempts to resolve this absurd dispute without further court involvement."  A true and correct copy of said e-mail is attached hereto as **Exhibit BB** and incorporated herein by this reference.

26.    However, I had already made it very clear that this motion would be brought if Plaintiff did not sign the Agreed Release as promised.  *See* Exhibit Y to this Declaration.  Additionally, I made it very clear through all the aforementioned correspondence that this dispute was the direct result of Plaintiff's refusal to sign the Agreed Release, and Mr. Smith himself had already made it abundantly clear that his client would not sign the Agreed Release and intended to proceed to trial.  Given the

DECLARATION OF RENEE C. OHLENDORF

31174255v1 913919 47170

1  extensive correspondence trail, I did not believe further clarification or engagement of

2  Mr. Smith's abusive tactics to be necessary.

3       27.    My rate on this matter is $200 per hour.  I have spent approximately 2

4  hours in reviewing and responding to all of Mr. Smith's communications regarding

5  this issue.  I have spent approximately 23 hours researching and drafting this Motion

6  and Declaration in support thereof.  Additionally, I anticipate I will spend another 5

7  hours to review and respond to oppositions by Plaintiff, 1 hour to attend the hearing

8  on this motion, as well as 9 hours to travel to and from Fresno from my office in Los

9  Angeles to attend the hearing.  I have also spent approximately 1 hour to draft an ex

10  parte application to extend the deadline for the filing of dispositional documents set by

11  this Court's Order entered on August 6, 2010, and a proposed order thereon.  [Docket

12  9].  My total attorneys' fees in connection with enforcing the settlement agreement

13  will be $8,200.

14

15       I declare under penalty of perjury under the laws of the United States of

16  America that the foregoing is true and correct.  Executed this 12th day of August 2010

17  at Los Angeles, California.

18

19                                       *s/Renee Choy Ohlendorf, Esq.*

                                    RENEE C. OHLENDORF

20

21

22

23

24

25

26

27

28

7

31174255v1 913919 47170